IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WILLIAM L. PATTON, JR. FAMILY
LIMITED PARTNERSHIP, LLLP, ET AL.                           PLAINTIFFS

vs.                         CASE NO. 4:04V1477GH

SIMON PROPERTY GROUP, INC., ET Al.                          DEFENDANTS

### ORDER

This lawsuit involves a written ground lease agreement between plaintiffs who are owners and lessors of the University Mall (Mall) in Little Rock, Arkansas, and defendants, who are ground lessees. The parties or their predecessors signed the lease agreement in 1965, and have amended it in writing six times. Plaintiffs filed this action, asserting two claims. On May 16, 2005, the Court entered an Order dismissing the second claim for relief, that is, plaintiffs' claim that defendants had an implied obligation under the lease agreement to locate and maintain viable retail tenants at the University Mall, so that percentage rental income would be generated.

In the remaining claim, plaintiffs contend that defendants breached an express covenant of the lease agreement requiring defendants to maintain the property in good and tenantable repair. Plaintiffs seek an injunction requiring defendants to restore the Mall to good and tenantable repair, order and condition as required by the lease agreement.

Motion for Summary Judgment

Defendants have filed a motion for summary judgment on the remaining claim, asserting that plaintiffs are not entitled to the remedy they seek–specific performance–as a matter of law.

On October 1, 1965, the predecessors of the parties in this action entered into a ground lease agreement (Agreement) which permitted defendants to develop the grounds into the Mall at defendants' own expense, known as a ground lease. The Agreement is to remain in effect until December 31, 2026. The Agreement has been amended six times between 1965 and 1988.

Section 5.3 of the Agreement provides that:

Lessee shall throughout the Term, at no expense to Lessors, maintain, or cause to be maintained in good and tenantable repair, order and condition, reasonable wear and tear excepted, the Leasehold Improvements, and promptly, at no expense to Lessors, make or cause to be made all necessary repairs, interior and exterior, structural and nonstructural, foreseen and unforeseen, to the Leasehold Improvements.

Section 14.3 of the Agreement provides:

This Agreement shall be construed and enforced in accordance with the laws of the State of Arkansas. Wherever in this Agreement it is provided that any party shall or will make any payment or perform or refrain from performing any act or obligation, each such provisions shall, even though not so expressed, be construed as an express covenant to make such payment or to perform or not to perform as the case may be, such act or obligation.

Section 17.1, under Article XVII Entitled Remedies Are Cumulative - No Implied Waiver provides:

Lessors and Lessee shall each be entitled to specific performance, and injunction or other appropriate equitable relief for any breach or threatened breach of any of the provisions of this Agreement, notwithstanding the availability of an adequate remedy at law, and each party hereby waives the right to raise such defense in any proceeding in equity. The specific remedies provided for in this Agreement are cumulative and are not exclusive of any other remedy. The failure of either party to insist in any one or more cases upon strict performance shall not be construed as a waiver or relinquishment for the future. No

>acceptance of rentals with knowledge of any default shall be deemed a waiver of such default.

Plaintiffs argue that defendants have waived the right to raise the adequacy of remedy at law defense pursuant to Section 17.1 of the Agreement. Defendants counter that the fact that the parties agreed to specific performance is not dispositive. *Franklin Point, Inc. v. Harris Trust and Sav. Bank*, 660 N.E. 2d 204, 208 (Ill. Ct. App. 1995) (court has independent duty to determine whether specific performance warranted notwithstanding that parties agreed to appropriateness of the remedy). The equitable remedy of specific performance is not a matter of right, but rests in the sound judicial discretion of the court to grant or to reject an application upon consideration of the circumstances of each case. *Savage v. Shields*, 293 F. 863, 868 (8th Cir. 1923)

Under Arkansas law, specific performance is not an available remedy if there is an adequate remedy at law, *City of Shannon Hills v.Sparks,* 52 Ark. App. 188 (1996),  the hardship to defendant outweighs plaintiff's legitimate interest in specific performance, *Dorsey v.  Hanover, Inc.*, 48 Ark. App. 108, 112 (1995),  or it would require too much supervision by the Court, *Nakdimen v. Atkinson Improvement Co.*, 149 Ark. 448 (1921).   In general, Arkansas courts have found that whether specific performance should be awarded in a particular case is a question of fact for the fact finder. *See Dossey v. Hanover, Inc.*, 48 Ark. App. 108, 110, 112 (1995)("The granting or withholding of specific performance depends on the equities of a particular case") *See also Mitchell v. House,* 71 Ark. App. 19, 21 (2000) (Whether or not specific performance should be awarded in a particular case is a question of fact for the chancellor")

Assuming that defendants have not waived the defense, defendants argue that the Agreement contains a liquidated damages provision which provides a reasonably certain method to calculate damages. They also claim that the general measure of damages in situations similar to this, that is cost of repairs, is not applicable in this instance. They state that the estimated $15 million to $18 million in repairs sought by plaintiffs is unwarranted. Defendants argue that as the action is brought before the end of the term of the lease, the proper measure of damages is the diminution in value to the lessor's interest caused by the breach. They further contend that plaintiffs' damages are limited under the economic waste doctrine. Defendants rely on cases where damages were sought for the breach of contract and the only question was the proper measure of damages *See Pennington v. Rhodes*, 55 Ark. App. 42 (1996) (breach of contract action against builder alleging house was defective); *Williams v. Charles Sloan, Inc.*, 17 Ark. App. 247 (1986) (breach of contract action for damages against house builder-vendor); *Ed Miller & Sons, Inc. v. Earl*, 502 N.W. 2d 444 (Neb. 1993) (action for damages for failure to maintain and repair premises); *Peevyhouse v. Garland Coal & Mining Co.*, 382 P. 2d 109 (Okla. 1963)(action for damages for breach of coal mining lease).

Here, plaintiffs seek specific performance. The facts are clearly in dispute regarding whether the harm is quantifiable and whether damages are adequate. Defendants have submitted statements from experts and other individuals who contend that requiring defendants to make the necessary repairs to the Mall would be a waste of money (see affidavit of John Chapman, Exhibit B to Defendants' Motion for Summary Judgment), and that the value of the property is less than the cost of improvements, such that major expenditures to repair the Mall would be unreasonable and economically wasteful(affidavit of Robert McCarley, Exhibit M to Defendants' Motion for Summary Judgment).

Plaintiffs dispute the analyses and conclusions of McCarley and Chapman and assert that defendants have presented conflicting evidence concerning the value of the Mall. They argue that other evidence, such as defendants' 2004 Form 10-K filed with the Securities and Exchange Commission, defendants' valuation of the lease in the transfer to the newly formed REIT, and defendants' offers to sell undermine McCarley's appraisal. They also question the reliability and accuracy of McCarley's appraisal. They have submitted the affidavits of William Patton and Louis Cella, officers of the corporations owning the property who contend that the damage is not quantifiable (Exhibits B and C to Plaintiffs' Response to the Motion for Summary Judgment). In his affidavit, Norman B. Krone, an expert for plaintiffs, states that he disagrees with many of the conclusions and opinions of defendants' experts. He concludes that it is not unreasonable or economically wasteful to make the repairs, that the harm caused by defendants is irreparable and cannot be quantified. (Exhibit D of Plaintiffs' Response to Motion for Summary Judgment) Similarly Dickson Flake, another expert for plaintiffs, opines that the condition of the Mall is causing, or threatens to cause, harm to plaintiffs for which money damages cannot be calculated with reasonable certainty. (Exhibit E to Plaintiffs' Response to Motion for Summary Judgment) Resolution of the issue of the whether damages are adequate involve contested factual issues. Thus, the Court cannot find as a matter of law that plaintiffs have an adequate remedy at law.

Defendants further assert that specific performance is not warranted because the hardship to defendants outweighs plaintiffs' interest in specific performance. Defendants contend that the $15 million to $18 million in repairs sought by plaintiffs would not add significant value to plaintiffs' interest, but would saddle defendants with costly and unnecessary repairs.

Plaintiffs counter that any hardship on defendants is a product of their own doing, by agreeing to injunctive relief in the case of breach, and by failing to maintain and repair the Mall as required by the Agreement. *See Craft Builders, Inc. v. Ellis D. Taylor, Inc.* 254 A.2d 233, 235 (Del. 1969) (specific performance will not be denied when hardship is due to defendant's own acts or is clearly foreseeable).

Resolution of this issue requires the Court to weigh the equities after consideration of all the evidence. The Court is not in a position, at this time, to find as a matter of law that the hardship to defendants would outweigh plaintiffs' interest in specific performance.

Defendants additionally argue that specific performance would be impractical because it would require too much supervision by the Court. "Chancery courts will not decree the specific performance of contracts requiring continuous acts involving mechanical skill and judgment, or technical knowledge, or acts requiring special skill, judgment, and discretion. . . .The courts generally recognize that to enforce the specific performance of such contracts would unreasonably tax the superintendence of the court." *Nakdimen v. Atkinson Improvement Co.*, 149 Ark. 448 (1921)(citations omitted). However, "specific performance of a construction contract should not be denied simply because it involves the construction of a building" *Franklin Point, Inc. v. Harris Trust and Sav. Bank,* 660 N.E.2d 204,206, (Ill.App. 1 Dist.1995) "Modern writers think that the 'difficulty of enforcement' idea is exaggerated and that the trend is toward specific performance. Clearly there is no binding rule that deprives equity of jurisdiction to order specific performance of a building contract. At most there is discretion in the court to refuse such a decree. " *Grayson-Robinson Stores, Inc. v. Iris Const. Corp.*, 168 N.E.2d 377, 379,(N.Y. 1960)(citing (5 Corbin, *Contracts* (1951 ed.), s 1172; 5 Williston, *Contracts (rev. ed.),* p .3977; Restatement, *Contracts*, s 371, comment a))

At this point the Court cannot determine how much, if any, supervision would be required in granting specific performance.

In sum, the Court finds that the motion for summary judgment should denied.

Motions in Limine

Defendants have filed three motions in limine. In the first motion , defendants seek to preclude introduction by plaintiffs of evidence pertaining to defendants' management, marketing, and leasing practices at the Mall. In their second motion in limine, defendants seek to exclude evidence of defendants' dealings concerning the proposed Summit Mall. They contend that such evidence is not relevant to the condition and state of repairs of the Mall.

Plaintiffs counter that the management, marketing and leasing practices at the Mall as well evidence concerning the proposed Summit Mall are relevant to the value defendants place on the Mall. Plaintiffs contend that the evidence will be relevant to rebut the testimony of defendants' experts.

In their third motion in limine, defendants seek to exclude two letters that are over 14 years old as well as documents that are over 20 years old. Plaintiffs assert that the evidence is relevant to the defenses raised.

This case will be tried to the Court. The Court will be in a better position to determine the relevance of the evidence at the time it is proffered. Therefore, the Court will deny the motions in limine without prejudice to renew at trial.

Plaintiffs' Motion for Court to Observe University Mall in Person During Trial

Plaintiffs ask that the Court observe the Mall in person during the trial to obtain a better appreciation of the Mall's condition. Plaintiffs also request that the Court view the neighboring Park Plaza Mall, for a comparison of the two Malls.

Defendants object, stating that since there will be extensive testimony regarding the condition of the Mall and well as the possible introduction of numerous photographs, a view would be cumulative. They assert that the visit would be disruptive, create a "public spectacle," and "eat into valuable court time." They argue that a view of Park Plaza Mall is irrelevant to the issues in the case.

The Court will deny, without prejudice, to renew the motion to view the Mall. The Court will be in a better position at trial to determine whether such a Court view would assist in resolving the issues in this case. The Court, however, is not of the opinion that a view of Park Plaza Mall would have any probative value in this case. Any view would be limited to University Mall.

Plaintiffs' Motion to Strike Designation for Trial Testimony From Deposition of David Ray

Plaintiffs contend that defendants did not timely designate Ray's deposition testimony or identify Ray as a witness in their pretrial disclosure sheet filed on August 1, 2005. Plaintiffs filed objections on August 15, 2005, to defendants' pretrial disclosures, objecting in general to defendants' use of deposition testimony because they had not designated any portions and more specifically to Ray's deposition testimony. Plaintiffs state that they did not learn of defendants' intention to use Ray's deposition testimony until August 18, 2005, when defendants filed their designation of portions of Ray's deposition for trial testimony. They claim they are prejudiced by this tardy disclosure.

Defendants argue that Ray is a very important witness, having served as plaintiffs' accountant and financial advisor, as well as plaintiffs' agent and negotiator for many matters concerning the Mall. Ray now lives in Cordova, Tennessee, outside the subpoena power of the Court. His deposition was taken on June 24, 2005.

Plaintiffs listed Ray as a potential witness in their pretrial disclosure sheet filed on August 1st. Defendants, in their August 1st pretrial disclosure, listed as potential witnesses all individuals whose deposition had been taken as well as all witnesses identified by the parties in pretrial disclosures.

The Court cannot find that defendants' designation of Ray's deposition testimony is tardy. Even assuming it is, plaintiffs are in no way prejudiced by it. The parties were obviously aware of Ray's existence as well as the possibility that he would be a witness. His deposition was taken 2 months ago; plaintiffs listed him as a possible witness, defendants listed as possible witnesses those individuals who were listed by plaintiffs. The Court is not persuaded that plaintiffs are prejudiced by having to counter designate portions of Ray's 88-page deposition. If this is too burdensome for plaintiffs, defendants can designate the entire deposition as trial testimony.

The Court is not persuaded that Ray's deposition testimony should be stricken.

## CONCLUSION

Accordingly, defendants' motion for summary judgment is denied; defendants' first, second, and third motions in limine are denied without prejudice to renew; plaintiffs' motion for Court to observe University Mall in person is denied without prejudice to renew; plaintiffs' motion to strike designation for trial testimony from David Ray's deposition is denied.

IT IS SO ORDERED this 31st day of August, 2005.

/s/ George Howard, Jr.
UNITED STATES DISTRICT JUDGE